UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
LARRY LAVONNE BERRY,               :
                                   :
        Petitioner,                :   Civ. Action No. 17-1983 (NLH)
                                   :
    v.                             :   OPINION
                                   :
WARDEN MARK A. KIRBY,              :
                                   :
        Respondent.                :
_____:

APPEARANCES:

Larry Lavonne Berry, No. 70372-056
FCI Fairton
P.O. Box 420
Fairton, NJ 08320
    Petitioner Pro se

Caroline A. Sadlowski, Esq.
John Andrew Ruymann, Esq.
Office of the U.S. Attorney
District Of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102
    Counsel for Respondent

HILLMAN, District Judge

Petitioner Larry Lavonne Berry ("Petitioner"), a prisoner presently incarcerated at the Federal Correctional Institution ("FCI") at Fairton in Fairton, New Jersey, filed this Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, challenging an institutional disciplinary decision that resulted in, inter alia, a loss of good time credits. ECF No. 1. Respondent

submitted an Answer, ECF No. 9, and Petitioner submitted his Reply, ECF No. 14. The Petition is now ripe for disposition. For the reasons that follow, the Petition will be denied.

## I. BACKGROUND

On June 4, 2009, Petitioner was sentenced in the U.S. District Court for the Eastern District of North Carolina to 258 months' imprisonment for several offenses related to armed bank robbery. See No. 08-cr-247 (E.D.N.C.). Petitioner is presently incarcerated at the Federal Correctional Institution at Fairton in Fairton, New Jersey, and has a projected release date of March 16, 2027. See No. 17-cv-1983, ECF No. 9 at 7 (D.N.J.).

On February 1, 2016, while Petitioner was incarcerated at the Federal Correctional Institution at Fort Dix in Fort Dix, New Jersey, Incident Report No. 2811071 was issued charging him with "Use of Any Narcotic," a violation of Bureau of Prisons ("BOP") Code 112. See ECF No. 9-2 at 4. The incident report written by Special Investigative Services Officer B. Virgillo provides as follows:

> I received written notification from Phamatech Laboratories which stated that specimen number BOP0002433798, which was tested under Suspect, had tested positive for Marijuana metabolite. Specimen number BOP0002433798 was assigned to the urine sample for inmate Berry, Larry #70372-056, who provided it on January 12, 2016 at 10:50. Health Services was notified and provided a memorandum on February 1, 2016, 12:30, stating that medication was not prescribed to inmate Berry which could have caused a positive test for the above mentioned drug.

Id.

On February 1, 2016, at approximately 2:48 p.m., the incident report was delivered to Petitioner. Id. Petitioner was advised of his right to remain silent during the disciplinary process but stated to the investigating officer that, "I was never order [sic] to give urine sample to the staff member." Id. at 5. Per the incident report, the investigating staff member referred the incident report to the Unit Discipline Committee ("UDC") for a hearing due to the seriousness of the infraction. Id.

On February 5, 2016, the initial hearing was held before the UDC. Id. at 5. At the hearing, Petitioner stated that he understood his rights and that "[t]his place is a set up." Id. at 4-5. The initial hearing notes provide that Petitioner declined to call any witnesses. Id. The UDC concluded that Petitioner had been appropriately charged with a violation of Code 112 and referred the case to the Discipline Hearing Officer ("DHO"). Id. If Petitioner were found guilty, the UDC recommended a loss of good conduct time and a loss of all privileges for a period of time. Id. Petitioner was advised that day of his rights before the DHO. See id. at 7. Petitioner did not request a staff representative or witnesses in the proceedings before the DHO. See id. at 9.

On February 26, 2016, the DHO convened the hearing. See id. at 11. At the hearing, Petitioner did not request a staff representative or witnesses and stated that he understood his rights and was ready to proceed. Id. Petitioner denied that he committed the prohibited act. Id. He admitted that he had signed the chain-of-custody form for the urine sample, but claimed that, contrary to his inmate certification on the form, he did not provide a urine sample. The chain-of-custody form contains a section entitled "inmate certification," in which Petitioner certified: "I have provided this specimen for the purpose of a drug screen. I acknowledge that the container was sealed with the tamper-proof seal in my presence and that the specimen number provided on this form and on the label affixed to the specimen container are the same."[1] It does not appear from the DHO report that Petitioner argued that the incident report was issued in retaliation for his refusal to withdraw complaints he submitted under the Prison Rape Elimination Act ("PREA"), an issue he raises for the first time in this Petition. See generally ECF No. 9-2 at 11-12.

---

[1] See BOP Program Statement 6060.08, Attachment A, "Standard Procedures for Collecting Urine Surveillance Samples" ("The inmate will then certify by signing the laboratory form that the specimen provided to the collection officer was provided by the inmate, sealed in the inmate's presence, and the information on the form and label is correct.").

Based on all the evidence, the DHO determined that Petitioner committed the prohibited act as charged. Id. at 12. The DHO relied upon the chain-of-custody form for the urine sample that had been drawn from Petitioner, a report from Pharmatech Laboratories indicating that said urine specimen had tested positive for marijuana, and a memorandum signed by the chief pharmacist at FCI Fort Dix providing that Petitioner had not been prescribed any medication that would cause a false positive. See ECF No. 9-2 at 12 (DHO report), 15 (chain-of-custody form); 16 (lab report); 17 (memorandum). The DHO also noted that he considered Petitioner's statement that he had not provided the urine sample but gave greater weight to the evidence provided by staff. Id. at 12.

The DHO sanctioned Petitioner with a loss of 40 days of good conduct time and 15 days of disciplinary segregation, which was suspended pending 90 days of clear conduct. Id. at 13. The DHO found that these sanctions were warranted because the use of drugs not prescribed by BOP medical staff demonstrates a disregard for the rules and regulations at FCI Fort Dix and could also result in Petitioner becoming indebted to other individuals for providing drugs, which could lead to physical violence. Id. In addition, the DHO explained that the sanctions were imposed to demonstrate the seriousness of the

violations to Petitioner as well as to other inmates. Id. The DHO then advised Petitioner of his right to appeal. Id.

On April 21, 2016, Petitioner filed a Regional Administrative Remedy Appeal of Incident Report Number 2811071 with the Northeast Regional Office of the Bureau of Prisons, which was denied on May 19, 2016. See ECF No. 9-1 at 9-11. On June 28, 2016, Petitioner appealed to the BOP Office of General Counsel, which denied the appeal on April 13, 2017. Id. at 12-13.

Petitioner then filed the instant habeas petition. ECF No. 1. In it, Petitioner explains that he signed a chain-of-custody form for a urine sample on January 12, 2016, however before the urine sample was taken, "the alarm went off officer need assistance, I was taken straight to the [SHU] special housing unit, therefore never giving any urine sample." Id. He goes on to explain that the urine for the lab test used must have been someone else's and that he believes that this incident report is in retaliation for writing two PREA reports on two officers, Officer Wright and Officer S. Fitzgerald. Petitioner requests that the forty days of good conduct time he was docked be reinstated and the incident report be removed from his record. See id. at 2, 8.

**II. DISCUSSION**

    **A. Legal Standard**

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement, including challenges to prison disciplinary proceedings, that affect the length of confinement, such as deprivation of good time credits. See Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973); Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997); Wilkinson v. Dotson, 544 U.S. 74 (2005). A challenge to a disciplinary action resulting in the loss of good conduct time is properly brought pursuant to § 2241, "as the action could affect the duration of the petitioner's sentence." Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008).

**B. Analysis**

Petitioner is challenging the result of a prison disciplinary hearing where he was found guilty of violating Code 112, for the "Use of Any Narcotic," and sanctioned with the loss of forty days of good conduct time by the DHO.

Prisoners are guaranteed certain due process protections when a prison disciplinary proceeding may result in the loss of good time credits. See Wolff v. McDonnell, 418 U.S. 539, 564-65 (1974). The due process protections afforded an inmate must include (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to

7

receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body. See Crosby v. Piazza, 465 F. App'x 168, 171-72 (3d Cir. 2012) (citing Wolff, 418 U.S. at 563-71). Additionally, the revocation of good time only satisfies the minimum requirements of procedural due process when the findings of the prison disciplinary board are supported by "some evidence" in the record. Lang v. Sauers, 529 F. App'x 121, 123 (3d Cir. 2013) (citing Superintendent v. Hill, 472 U.S. 445, 454 (1985)).

This standard is minimal and does not require an examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence. Id. (citing Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989)). The standard is simply whether "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. (quoting Hill, 472 U.S. at 455-56).

It appears, and he does not allege to the contrary, that Petitioner was provided with all the due process safeguards identified in Wolff. Petitioner received written notice of the charges against him at least twenty-four hours prior to the hearings, ECF No. 9-2 at 4, 9, 11; he had an opportunity to call witnesses and present evidence in his defense, which he

8

declined, id. at 7, 9, 11; he had an opportunity to receive assistance from a representative, which he also declined, id. at 7, 9, 11; he received a written statement of the evidence relied on and the reasons for the disciplinary action, id. at 12; and he appeared before an impartial decision-making body, id. at 11-13.[2] See Wolff, 418 at 563-71. Petitioner was thus afforded all due process to which he was entitled under Wolff.

To the extent that Petitioner argues that the decision of the DHO was not supported by the record, the Court finds that there is some evidence in the record to support the DHO's decision. A review of the record demonstrates that the DHO relied on the Incident Report, the investigation, the chain-of-custody form with inmate certification for the urine sample, the lab report, and the memorandum verifying that Petitioner was not prescribed any medication that would yield a positive report from his urine sample when making the decision. See ECF No. 9-2 at 30-31. During the investigation and the hearing, Petitioner admitted that it was his signature on the inmate certification on the chain-of-custody form for the urine sample. Id. This combined with the lab report and memorandum certainly provide more than some evidence in the record to support the DHO's decision that Petitioner violated Code 112.

---

[2] Petitioner does not allege that the DHO, who determined that he violated Code 112 and imposed the sanction, was not impartial.

Notably, this Court's role is limited to determine whether "some evidence" exists in the record to support the DHO's decision; the Court does not reassess the evidence, take new evidence, or evaluate witness credibility. See, e.g., Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989) (dismissing habeas petition because "positive urinalysis results on samples that officials claim to be [the inmate's] constitute some evidence" and "independent assessment" of the urinalysis is "not required"); McGee v. Scism, 463 F. App'x 61, 62 (3d Cir. 2012) ("The 'some evidence' standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."); Perez v. Rectenwald, No. 12-cv-2114, 2013 WL 5551266, at *4 (M.D. Pa. Oct. 8, 2013) ("The Court's responsibility under Hill is not to weigh this evidence or assess its probative value, but merely to determine that at least some evidence exists to support the conviction"). Because there is some evidence in the record to support a violation of Code 112, Petitioner's due process rights were not violated and he is not entitled to habeas relief. See, e.g., Seymour/Jones v. Kane, No. 92-1486, 1993 WL 235919, at *4 (E.D. Pa. June 30, 1993) (finding "some evidence" in the nature of a positive urinalysis result that showed sample belonged to plaintiff to support DHO's decision despite plaintiff's allegation that sample was tampered with).

Next, Petitioner argues that the incident report was issued in retaliation for exercising his First Amendment right to report Officers Fitzgerald and Wright under the Prison Rape Elimination Act. See ECF No. 1, 14. Although arising in the civil rights context, such an argument may be cognizable in a § 2241 petition to the extent that it affects the duration of his sentence. See McGee v. Scism, 463 F. App'x 61, 64 (3d Cir. 2012) (citing Queen v. Miner, 530 F.3d 253, 255 n.2 (3d Cir. 2008)); Speight v. Minor, 245 F. App'x 213, 215 (3d Cir. 2007).

A prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that 1) the conduct in which he was engaged was constitutionally protected, 2) he suffered "adverse action" at the hands of prison officials, and 3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. See Carter v. McGrady, 292 F.3d 152, 157–58 (3d Cir. 2002); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Once a prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that it "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Rauser, 241 F.3d at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

There is no merit to Petitioner's contention in light of his allegations and the evidence in the record, especially his chain-of-custody form with inmate certification for the urine sample. First, at no point during the disciplinary proceedings did Petitioner raise the argument of retaliation and thus this issue was not developed during the disciplinary proceedings and investigation. It is not the Court's province to reopen the administrative proceedings in this habeas matter, reassess the weight of the evidence presented at the hearing, or entertain new theories that lack evidentiary support.

Second, Petitioner has not met his burden to show that his exercise of a constitutional right was a substantial or motivating factor for the DHO's decision to discipline him given the evidence relied upon by the DHO in the report. Although Petitioner states that Case Manager J. Wright is the sister of Officer Wright, against whom Petitioner filed a PREA report, Case Manager Wright's only involvement in the disciplinary proceedings was to deliver to Petitioner the notice of the DHO hearing and a description of his inmate rights. She was not involved in the incident, incident report, investigation, UDC decision, or DHO hearing. Petitioner makes no allegation that any reporting employee, investigator, UDC, or DHO were biased or had any motive to retaliate against him for filing the PREA reports.

Third, even if he could demonstrate a prima facie case, there is evidence in the record that shows that the DHO would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) (applying Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001)); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (holding that if a prison disciplinary committee's finding of a violation of prison rules is based on some evidence, that "finding essentially checkmates [a] retaliation claim") (citing Hill, 472 U.S. at 454–56). Here, the evidence demonstrates that Petitioner certified that the urine sample was his on the chain-of-custody form and the urine sample tested positive for a narcotic in violation of Code 112.

Finally, to the extent Petitioner also argues that the loss of forty days of good time credit violates the Eighth Amendment because it is "grossly disproportionate" to the severity of the offense, see Rummel v. Estelle, 445 U.S. 263, 271-74 (1980), the Court notes that it is within the range of available sanctions for a violation of Code 112. See 28 C.F.R. § 541.3. See also Shelton v. Jordan, 613 F. App'x 134, 135 (3d Cir. 2015) ("[g]iven the severity of [petitioner's] offenses, and because the sanctions fall within the applicable range permitted by the regulation, we conclude that the punishment here did not violate

the Eighth Amendment"). As such, the Court finds that the sanction imposed on Petitioner did not violate the Eighth Amendment.

**III. CONCLUSION**

For the reasons set forth above, the Petition will be DENIED. An appropriate Order follows.

Dated: April 24, 2019             s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.